UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:20-cv-00063-MOC

| | |
|---|---|
| **KELSIE LYNN MODE,** ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER** |
| v. ) | |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of Social Security** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on review of a final decision of the Commissioner of Social Security denying Plaintiff Kelsie Lynn Mode's application for disability and disability insurance benefits under Title II, of the Social Security Act ("Act"). Plaintiff filed a Motion for Summary Judgment, requesting remand for rehearing. (Doc. No. 19). The Commissioner in turn filed a Motion for Summary Judgment, requesting affirmance. (Doc. No. 22). As set forth below, Plaintiff's motion is denied, the Commissioner's motion is granted, and this action is dismissed.

**I.     BACKGROUND**

**A. Administrative History**

Plaintiff brought this action under section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision denying her claim for a period of disability under Title II of the Act, 42 U.S.C. §§ 401-433.

Plaintiff, who in June 2007 had been awarded Supplemental Security Income Benefits, turned 18 years old, thus triggering a redetermination under the rules of disability used for adults per Section 1614(a)(3)(H) of the Act. (Doc. No. 18-1 at 306). On May 1, 2017, Plaintiff's

-1-

disability was terminated. (Doc. No. 18-1 at 112-17). Plaintiff requested reconsideration of her disability termination on June 1, 2017. (Doc. No. 18-1 at 118, 122). On December 11, 2017, a Disability Hearing Officer found that Plaintiff was not disabled. (Doc. No. 18-1 at 130-47). Plaintiff filed a written request for a hearing on March 3, 2018. (Doc. No. 18-1 at 150). Plaintiff appeared before an Administrative Law Judge (ALJ) on May 23, 2019. (Doc. No. 18-1 at 16, 35). The ALJ, considering the claim *de novo*, found on June 21, 2019 that Plaintiff was not disabled. (Doc. No. 18-1 at 13-33). Plaintiff requested review of the ALJ's decision by the Appeals Council on July 9, 2019. (Doc. No. 18-1 at 197-200). The Appeals Council denied Plaintiff's request for review. (Doc. No. 18-1 at 1-7).

**B. Sequential Evaluation**

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for disability benefits under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

    a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

    b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

   d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

   e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### C. The Administrative Decision

The issue before the ALJ was whether Plaintiff was disabled under Section 1614(a)(3)(A) of the Social Security Act. In rendering his decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Step one was not considered as this was a redetermination for disability at age 18. See 20 C.F.R. § 416.920(a). At step two, the ALJ found that Plaintiff had the following severe impairments: borderline intellectual function and attention-deficit hyperactivity disorder (ADHD). (Doc. No. 18-1 at 18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Doc. No. 18-1 at 18-20). The ALJ found Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with certain nonexertional limitations: Plaintiff can perform simple, routine, repetitive tasks for two-hour intervals for the duration of the workday with no concentrated exposure to hazards or

unprotected heights and occasional public interaction. (Doc. No. 18-1 at 25). Further, Plaintiff can work at a non-production pace in a stable work environment. (Id.).

Step four was resolved for Plaintiff as she has no past relevant work history. Id. But at Step five, based on Plaintiff's residual functional capacity, the ALJ concluded there were jobs that exist in significant numbers in the national economy that she could perform. (Doc. No. 18-1 at 25). Because such work existed, the ALJ held that Plaintiff was not disabled under the Act. (Doc. No. 18-1 at 26-27).

## II. DISCUSSION

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

When reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Courts do not conduct *de novo* review of the evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Instead, our inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla evidence but may be less than a preponderance." Id. The Court will not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Id. (alterations omitted). Put

simply, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (explaining courts do not "min[e] facts from the [administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

Plaintiff advances claims regarding the practical effects of Plaintiff's mental impairments in the RFC ruling. First, Plaintiff claims that the ALJ's residual functional capacity finding did not include all limitations stemming from her borderline intellectual functioning and ADHD. Next, Plaintiff asserts that because the ALJ's residual functional capacity finding did not include all limitations allegedly arising from Plaintiff's borderline intellectual functioning and ADHD claims, the ALJ's RFC finding and denial of benefits is not supported by substantial evidence.

### a. The ALJ's Consideration of Expert Opinion

Plaintiff argues that the ALJ failed to fully consider the expert opinion of the State Agency consultative evaluator, Rebecca Taylor, and improperly omitted limitations from the RFC finding. (Doc. No. 20 at 5). Plaintiff extrapolates three additional practical limitations of her alleged disability from Taylor's report: (1) Plaintiff's distractibility and resultant need to be

-5-

refocused by someone else; (2) Plaintiff's inability to sustain attention for more than 90 minutes; (3) and Plaintiff's limitation to only one-step instructions and need for additional accommodations, improperly omitted limitations from the RFC finding. (Id.). Plaintiff alleges that failing to recognize the three aforementioned practical limitations in the RFC frustrates judicial review, so remand is appropriate. The Court disagrees and finds that the ALJ properly evaluated Taylor's opinion as well as that of other opinions referenced in the ALJ decision. An ALJ's determination "as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'. . . or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 Fed. App'x 264, 267 (4th Cir. 2015) (internal citations omitted).

Plaintiff recounts in detail the numerous evaluations Plaintiff has undergone, arguing that there are additional practical limitations the ALJ did not consider implicit in the opinions of the host of evaluators. (Doc. No. 20 at 5-13). But while Plaintiff may disagree with how the ALJ characterized these experts' opinions, there can be no doubt that the ALJ considered the evidence. First, the ALJ considered Talyor's psychological evaluation and relied on Taylor's findings throughout his review of Plaintiff's case. (Doc. No. 18-1 at 19-22) (citing Doc. No. 18-1 at 551-55). The ALJ noted from Taylor's report that Plaintiff had some trouble understanding questions during her examination, but that she was observed forming appropriate mental responses to things with which she was unfamiliar. (Doc. No. 18-1 at 24) (citing Doc. No. 18-1 at 551-56). The ALJ also noted from a combination of Taylor's, Johnny Kirby's, and Lincoln County School's reports that Plaintiff was able to follow instructions, remember where things belonged, and perform tasks like changing money. (Id.) (citing Doc. No. 18-1 at 551-56, 557-66, 570-76).

Plaintiff argues that as early as 2014, she had "test results indicat[ing] that her thought processes do not always reach completion. In other words, she may be working on a task or planning to do something and will not complete the activity because she gets distracted." (Doc. No. 20) (citing Doc. No. 18-1 at 564). The ALJ, when considering Plaintiff's distractability, discussed and weighed the opinions of both Dr. William Elmore and Taylor. (Doc. No. 18-1 at 19-24). Specifically, the ALJ took into account Dr. Elmore's opinion that "[h]er attention occationally drifted but she was easily refocused," and that Taylor concluded she was "easily redirected." (Doc. No. 18-1 at 29) (citing Doc. No. 18-1 at 551-56, 562).

Plaintiff relies on her High School Exit-Summary as evidence supporting the claim that the ALJ did not consider expert opinion about Plaintiff's ability to maintain her attention. (Doc. No. 20 at 5). Citing the Exit-Summary, Plaintiff concludes that she completed assignments 95% of the time and could maintain sustained attention for 90 minutes. (Doc. No. 20 at 9) (citing Doc. No. 18-1 at 558). Plaintiff improperly asserts that the ALJ did not consider this evidence. (Id.). The ALJ considered the High School Exit-Summary nearly one dozen times in the findings of fact and conclusion of law (Doc. No. 18-1 at 19-25). Further, the ALJ weighed the Exit-Summary in conjuction with Taylor's evaluation and the Initial Disability Determination completed by the state agency psychological consultants Dr. April L. Strobel-Nuss and Dr. Sharon J. Skoll. (Doc. No. 18-1 at 24-25) (citing Doc. No. 18-1 at 99-110, 421-440). The ALJ properly weighed numerous sources of evidence to conclude that Plaintiff is indeed capable of working jobs requiring attention in excess of 90 minutes. (Doc. No. 18-1 at 26).

Plaintiff also alleges that the ALJ failed to consider expert opinion that Plaintiff was only capable of completing one-step tasks. (Doc. No. 20 at 5). However, the ALJ considered this alleged practical limitation and specifically considered her ability to complete tasks. In doing so,

the ALJ referred to the opinion of Shameka Gordon, the vocational coaching specialist at Goodwill. (Doc. No. 18-1 at 23-25) (citing Doc. No. 18-1 at 618-26). Drawing from Gordon's treatment records, the ALJ found that while at times she needed some redirection, Plaintiff could generally multi-task and was observed excelling in stocking, pulling orders, food preparation cleaning, and retail and book scanning. (Doc. No. 18-1 at 23). From the function report completed by Plaintiff's mother, the ALJ considered that Plaintiff had a hard time following instructions and was forgetful. (Doc. No. 18-1 at 24) (citing Doc. No. 18-1 at 288-98). But, the ALJ afforded Plaintiff's mother's opinion little weight, as he found she overstated the degree of limitation compared to other expert opinions. (Id.).

To thoroughly consider multiple perspectives relating to Plaintiff's ability to complete tasks, the ALJ synchronized the reports of additional experts. When weighing Leah Sigmon's Teacher Questionnaire, he compared her findings with Taylor's Consultative Examination Report. (Doc. No. 18-1 at 24) (citing Doc. No. 18-1 at 315-26). From Sigmon's assessment, the ALJ found that Plaintiff could perform repetitive tasks based on objective testing. (Id.). Sigmon had the additional benefit of observing Plaintiff for five hours a day over the course of three years leading up to Plaintiff's eighteenth birthday. (Id.). The ALJ noted that Sigmon's report supported some greater limitation based on Plaintiff's cognitive testing. (Id.). The ALJ also weighed Taylor's Consultative Examination Report (Doc. No. 18-1 at 24) (citing Doc. No. 18-1 at 551-56) against the Lincoln County Psychological Evaluation (Doc. No. 18-1 at 24) (citing Doc. No. 18-1 at 557-66), and Kirby's Consultative Examination Report (Doc. No. 18-1 at 24) (citing Doc. No. 18-1 at 570-76), finding that their conclusions were consitent with Sigmon's assessment that Plaintiff has the adequate ability to perform tasks and follow instructions.

    **b. RFC Determination**

Having identified additional practical effects of her functional limitations, Plaintiff argues that the RFC determination is deficient. (Doc. No. 20 at 13–21). This argument fails because the ALJ provided the explanatory discussion necessary to support his findings and because substantial evidence supports the ALJ's conclusions.

Residual functional capacity is an administrative assessment of the most an individual can do despite the limitations caused by physical and mental impairments. 20 C.F.R. § 404.1545(a); Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1-2 (July 2, 1996). Plaintiff bears the burden of providing evidence establishing the degree to which her impairments limit her residual functional capacity. 20 C.F.R. § 404.1245(a)(3). The ALJ bears sole responsibility for assessing a claimant's residual functional capacity. 20 C.F.R. § 404.1546(c).

In making the residual functional capacity assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR 96-8p, 1996 WL 374184, at *2. The ALJ is not obliged, however, to precisely mirror any particular piece of evidence, or to discuss every piece of evidence in the record. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing 42 U.S.C. § 405(b)(1) and affirming an ALJ decision that contained a discussion of "the whole record," instead of a description of every piece of evidence in the record); Felton-Miller v. Astrue, 459 F. App'x 226, 230–31 (4th Cir. 2011) (explaining that an ALJ should base an individual's residual functional capacity on all available evidence); Griffin v. Comm'r, Soc. Sec. Admin., No. SAG-16-274, 2017 WL 432678, at *3 (D. Md. Jan. 31, 2017 ("ALJ need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining [residual functional capacity]"). Rather, the ALJ must review and synthesize the record in its entirety and make findings about

what the evidence shows. See 20 C.F.R. § 404.1520b ("After we review all of the evidence relevant to your claim we make findings about what the evidence shows."). Moreover, a reviewing court must read the ALJ's decision as a whole, meaning the decision should be affirmed even if the supporting discussion for a particular fact is found in a section of the decision covering some other aspect of the sequential review process. Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. Dec. 14, 2011) (affirming ALJ decision on Listings, in part, because the rest of the ALJ's decision made clear the reasoning for the conclusion regarding the Listings); Keene v. Berryhill, 732 F. App'x 174, 177 (4th Cir. May 2, 2018) (reading an ALJ decision as a whole and affirming based on the fact that the ALJ stated a coherent basis for conclusions).

Plaintiff claims that the ALJ failed to adequately account for Plaintiff's multiple alleged limitations in her RFC. The Court disagrees.

Plaintiff first argues that the ALJ did not consider Plaintiff's distractibility and did not include any limitation in the RFC to account for this limitation. (Doc. No. 20 at 13-16). However, the ALJ's determination included an accounting of Plaintiff's reported distractibility. (Doc. No. 18-1 at 19-20). This included evidence from the extended vocational assessment at Goodwill which the ALJ compared against Plaintiff's mother's report and Plaintiff's High School Psychological Evaluation. Weighing all this together, the ALJ concluded that Plaintiff's attention deficits were not so severe as to negatively impact her test results. (Id.) (citing Doc. No. 18-1 at 618-26, 288-98, 557-66). Plaintiff completed all tasks during her vocational rehabilitation assessment. (Doc. No. 18-1 at 618-26). Additionally, while Plaintiff struggled to prepare clothing for display, she demonstrated the ability to wipe tables, clean windows, vacuum, and exchange money. (Id.). To the extent the ALJ found functional limitations to be supported by the

aforementioned expert opinions, he included them in the residual functional capacity finding. (Doc. No. 18-1 at 19-25).

Plaintiff continues her argument by asserting that the mere fact that the 2017 High School Exit Evaluation concluded "[s]he completed assignments 95% of the time and could maintain sustained attention for 90 minutes," (Doc. No. 20 at 9) (citing Doc. No. 18-1 at 558) is sufficient to conclude that Plaintiff is only able to sustain attention for 90 minutes. (Doc. No. 20 at 17). Plaintiff further improperly concludes that the ALJ reference to the aforementioned Exit Evaluation means that the ALJ only considered this evidence. (Id.). The ALJ also weighed the expert opinion found in the Initial Disability Determination (Doc. No. 18-1 at 24-25) (citing Doc. No. 18-1 at 99-110), and both the Mental RFC Assessment and Psychiatric Review. (Doc. No. 18-1 at 24-25) (citing Doc. No. 18-1 at 421-40).

Finally, Plaintiff disagrees with the ALJ's finding that Plaintiff is capable of performing reasoning level 2 jobs. (Doc. No. 20 at 19). Plaintiff contends that requiring her to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions" is at odds with Taylor's finding that Plaintiff can perform "simple, routine, repetitive tasks." (Doc. No. 18-1 at 552). But the ALJ does not pick and choose evidence to consider—the ALJ reviews and synthesizes all of the evidence. While the RFC is the most one can do despite functional limitations, it is the ALJ's preogative to weigh numerous sources of evidence and reach a conclusion about Plaintiff's actual ability.

The ALJ's decision is supported by substantial evidence. While the ALJ did not discuss every minute piece of evidence, his determination reflects a wholistic evaluation of the available evidence. Anderson v. Colvin, No. 5:13-cv-55-RLV, 2015 WL 6394397, at *9 (W.D.N.C. Oct. 22, 2015) (reasoning "there is no rigid requirement that the ALJ specifically refer to every piece

of evidence in his decision.") (quoting <u>Reid v. Comm'r of Soc. Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014).

## III. CONCLUSION

The Court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), the Court affirms the decision of the ALJ.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 19) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 22) is **GRANTED;** and

(4) This action is **DISMISSED** with prejudice**.**

Signed: June 23, 2021

Max O. Cogburn Jr.
United States District Judge